[Cite as *In re T.K.*, 2026-Ohio-2583.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
STARK COUNTY, OHIO

| | |
|---|---|
| IN THE MATTER OF: T.K. | Case No. 2026CA00037 |
| | <u>Opinion and Judgment Entry</u> |
| | Appeal from the Stark County Court of Common Pleas, Juvenile Division, Case No. 2024JCV01439 |
| | Judgment: Affirmed |
| | Date of Judgment Entry: July 2, 2026 |

**BEFORE:** Andrew J. King; William B. Hoffman; David M. Gormley, Judges

**APPEARANCES:** Brandon J. Waltenbaugh, Chris Eoff, Stark County Job and Family Services, for Appellee; Aaron Kovalchik, for Appellant.

*Hoffman, J.*

{¶1} Appellant-Mother R. K. appeals the decision of the Stark County Court of Common Pleas, Juvenile Division, terminating her parental rights and granting permanent custody of her minor child T.K. to Appellee Stark County job and Family Services.

STATEMENT OF THE FACTS AND CASE

{¶2} Appellant R.K. is the mother of minor child, T.K. (dob 3/25/2019), who is the subject of this appeal. She is also the mother of minor children S.K. (dob 2/24/14),

A.O. (dob 1/14/2015), and X.J. (dob 4/27/2018). (T. at 17, 23-24). J.B. is the Father of T.K.

{¶3} On December 12, 2024, Stark County Job and Family Services (SCJFS) filed Complaints alleging the dependency and/or neglect of the minor children. (T. at 17).

{¶4} The Complaint stated Appellant had lost custody of another child and S.K. in 2014 due to concerns for Appellant's mental health and domestic violence in the home. S.K. was ultimately returned to Appellant's custody at the conclusion of that case. Then in 2022, Summit County Children Services removed the children due to continued domestic violence in the home, lack of food in the home, and Appellant's mental health. The children were again ultimately returned to Appellant's custody at the conclusion of that case in May, 2024. SCJFS continued to receive reports about the family which included the children coming to school unkempt, T.K. smelling like urine, the conditions of the home, S.K. caring for the younger children, Appellant sleeping excessively and not making food for the children, Appellant's drug use, T.K.'s father having broken a window in the home, and Appellant not cooperating with non-court attempts to remedy the concerns by the agency. (T. at 29-30).

{¶5} On the same day, the trial court granted emergency temporary custody of the children to SCJFS via an ex-parte order. The trial court also ordered Appellant to complete a parenting assessment, a substance abuse assessment, and a drug screen within 48 hours, and comply with all recommendations.

{¶6} On December 13, 2025, the trial court held an emergency shelter care hearing finding probable cause existed for the issuance of the emergency orders, SCJFS had engaged in reasonable efforts to prevent the need for the removal of the children, SCJFS had made intensive efforts to identify and engage appropriate and willing kinship

caregivers for the children, continued residence of the children with Appellant was contrary to the children's best interests. The trial court also approved and adopted the pre-adjudicatory orders requested by SCJFS and placed the children into the temporary custody of SCJFS. The trial court also found Appellant had an extensive history with SCJFS due to concerns for her mental health, domestic violence in the home, and lack of food in the home. Current concerns for the children included not being fed and being unkempt at school and the older child S.K., who was 10 years old at the time, providing for the younger children while Appellant slept.

{¶7} On February 27, 2024, the trial court found the children to be dependent and continued their placement in the temporary custody of SCJFS. The trial court reiterated its earlier concerns in addition to concerns Appellant tested positive for THC and cocaine and had refused to cooperate with non-court services. The trial court also placed the children into the temporary custody of SCJFS, approved and adopted the initial case plan, found SCJFS had engaged in reasonable efforts to prevent the need for the removal of the children, and continued residence of the children with Appellant was contrary to the children's best interest, and SCJFS had made intensive efforts to identify and engage appropriate and willing kinship caregivers for the children. (T. at 17, 24, 29).

{¶8} On July 8, 2025, the trial court reviewed the case and ordered status quo. The trial court found Appellant had not yet completed a parenting evaluation, had failed to complete recommended substance abuse treatment and had been discharged, did not have housing, and was "more concerned with her phone than engaging with her children" during visitation.

{¶9} On November 6, 2025, SCJFS filed motions seeking permanent custody of three of the children, alleging, inter alia, the children could not be placed with Appellant

within a reasonable amount of time and permanent custody was in the children's best interest. SCJFS also moved the trial court to change legal custody of S.K. to a kinship provider.

{¶10} On November 7, 2025, the trial court again reviewed the case, finding SCJFS had made reasonable efforts to finalize the permanency plan in effect and had made intensive efforts to identify and engage appropriate and willing kinship caregivers for the children. The trial court maintained status quo. With regard to Appellant, the trial court found she had still not started her parenting assessment, was not compliant with substance abuse treatment or drug screening, did not have stable housing, and had not provided proof of income.

{¶11} On January 20, 2026, the Guardians ad litem for the children filed their final reports. Attorney Amanda Krochka, the Guardian ad litem for S.K., A.O. and X.J., and Attorney Anastasia Dunigan, the Guardian ad litem for T.K., both recommended permanent custody of the children be granted to SCJFS, based on the best interests of the children. Both raised concerns regarding Appellant's lack of compliance with her case plan and the lack of safety care for the children.

{¶12} On January 26, 2026, a hearing was held on the pending motions for permanent custody. At the hearing, the trial court heard the following evidence:

{¶13} Emily Smith testified she is employed by SCJFS and was the original ongoing caseworker assigned to the case. (T. at 23). She testified to the procedural history of the case and stated the children remained in the temporary custody of SCJFS throughout the case. (T. at 24-25). Caseworker Smith testified the children were removed from Appellant's custody partly due to her mental health, substance abuse, history of losing custody of her children, poor home conditions, domestic violence within the home,

and the children attending school hungry and T.K. smelling of urine. (T. at 29-30). She stated SCJFS first created a case plan to remedy those concerns, and the case plan was approved and adopted by the trial court on several different occasions. (T. at 27-30). She stated Appellant was provided with a copy of the case plan and she discussed it with her. (T. at 35). Appellant's case plan ordered her to complete a parenting assessment, a drug and alcohol assessment, comply with all resulting recommendations, and comply with random drug screening. (T. at 28). Appellant failed to complete a parenting assessment during Ms. Smith's assignment to the case. (T. at 28-29). Appellant further failed to complete any additional drug screens after testing positive for cocaine and THC on December 12, 2024. (T. at 28). Appellant was discharged from further recommended drug treatment as non-compliant. (T. at 28). Appellant was again recommended to engage in drug treatment but was still not actively participating. (T. at 28). Caseworker Smith testified Appellant only started doing services after SCJFS filed for permanent custody of the children. (T. at 29). She testified Appellant had not substantially complied with her case plan and had not remedied the risks resulting in the continued removal of the children. (T. at 30). Appellant Mother also has prior convictions for Assault and Obstructing Official Business.

{¶14} Ms. Smith testified Father initially refused visits and therefore did not visit with T.K. from the time of his removal on December 12, 2024, until April 18, 2025, a period in excess of 90 days.

{¶15} Ms. Smith testified there was another period over 90 days in which Father did not visit, from July 15, 2025, until October 2025. Ms. Smith testified during part of that time period, Father had been arrested on a charge of F5 Aggravated Menacing,

convicted of M1 Aggravated Menacing, and sentenced to jail time for said conviction. Ms. Smith testified she was the victim of that crime.

{¶16} Ms. Smith testified Father was also on probation due to a conviction for M1 Domestic Violence and Child Endangering for tackling Mother while she was holding T.K.

{¶17} Ms. Smith testified Father's case plan included a risk assessment at Melymbrosia and to follow all recommendations. Ms. Smith testified Father completed the three appointments for the assessment on June 24, 2025. Dr. Dean's assessment recommended Domestic Violence treatment and a mental health evaluation. Ms. Smith testified Dr. Dean and Melymbrosia refused to allow Father to participate in domestic violence treatment at Melymbrosia based upon Father's behaviors.

{¶18} Ms. Smith testified while she was involved in the case Father failed to complete any Domestic Violence treatment but did a Comprehensive Assessment at CommQuest, which recommended individual counseling, but Father declined counseling.

{¶19} On cross-examination, Ms. Smith testified she went to the foster home to see T.K. and the foster parent monthly. Ms. Smith testified in April 2025, there was an incident of alleged molestation of T.K. in the foster home. Ms. Smith testified a hotline report was made, and the foster mother was instructed to take T.K. to Akron Children's Hospital for an evaluation. Ms. Smith testified she spoke with the Guardian ad litem about the incident.

{¶20} On re-direct, Ms. Smith testified the allegations of molestation occurred when another foster child in the home, a ten-year-old girl snuck into T.K.'s room in the middle of the night and put her hand down his pants. The girl attempted this another time, but T.K. fought her off, and nothing happened. The foster mother cooperated with the Agency by taking T.K. to Akron Children's Hospital for an assessment and she

procured cameras for the home. The girl was removed from the foster home. Ms. Smith testified there is an investigation in Youngstown against that girl and another person.

{¶21} Ms. Smith testified T.K. is in a new kinship home placement with his paternal aunt and is doing well. The foster mother is Father's adopted sister.

{¶22} Ms. Smith was removed as the caseworker at the end of July 2025 due to Father's threats and the criminal prosecution.

{¶23} Amy Craig testified she is employed by SCJFS and was assigned to the case as the ongoing caseworker starting October 2, 2025. (T. at 91). She testified Appellant started her parenting evaluation in November 2025, but canceled a later appointment, and had still not finished the evaluation by the time of the permanent custody hearing. (T. at 92). She agreed with Caseworker Smith, stating Appellant had not substantially complied with case plan objectives and had failed to reduce the concerns causing the continued removal of the children. (T. at 92-93).

{¶24} Caseworker Craig further testified T.K. is placed in a kinship home with a paternal aunt. (T. at 133). A.O. is placed in a foster home and is in counseling. (T. at 133). X.J. is in a separate foster home. (T. at 133). She testified the children are behind in schooling and have mental health issues. (T. at 133). T.K. completed a trauma evaluation during the case. (T. at 136). During the evaluation, T.K. stated he was afraid of his father and on one occasion said he was not safe with Appellant Mother. (T. at 136). SCJFS explored appropriate relative placement for the children, but none was located. (T. at 133-134).

{¶25} Ms. Craig testified Appellant's visits with her children would initially go well for the first hour but she "is at a loss of what to do" during the second hour. (T. at 134). Ms. Craig stated Appellant's visits with the children are "a handful" and Appellant does

not redirect the children or keep them focused on planned activities. (T. at 134). She testified Appellant "seems checked out" during visits. (T. at 134).

{¶26} Ms. Craig testified T.K. has a bond with Mother and some bond with Father. She stated the children were not "fully attached" to Appellant, and they are more attached to their caregivers. (T. at 138). She testified the children have been in and out of foster care throughout their lives, and they need stability. (T. at 137).

{¶27} Ms. Craig testified T.K. has known developmental delays at this time and is repeating Kindergarten.

{¶28} She stated T.K. completed a trauma evaluation and much of what he disclosed related to his relationship with his father. T.K. disclosed he feared his father and did not want to live with him. T.K. did not report anything about the sex abuse but did say he loved his mother.

{¶29} Caseworker Craig testified when Father's visits went forward, visits were okay if Father focused on T.K., but most of the time he was argumentative with the caseworker and supervisor for half of the visit, which caused problems for T.K. Father said things to T.K. like "the foster family does not want you and "no one there loves you".

{¶30} Caseworker Craig further testified during her involvement, Father had 13 visits scheduled, but only 4 visits proceeded. Ms. Craig testified that of the 9 visits that did not go forward, Father was a "no show', Father refused the visit because he did not want the designated visitation supervisor, or Father was removed from the site due to his behavior.

{¶31} She testified the benefit of permanent custody would outweigh any detrimental impact of severing Appellant's parental rights. (T. at 137). She testified permanent custody was in the best interest of the children so they could "have a safe,

stable, nurturing home to get their needs met, to feel safe and thrive ... to be successful adults". (T. at 137).

{¶32} Ms. Craig testified T.K. would benefit from permanent custody and the ability to be adopted and the benefit of permanency outweighs the harm of severing the parental bonds.

{¶33} Attorney Krochka testified she requested to withdraw as GAL in this case because her conversations with Father were unproductive and concerning, Father would not move forward from the incident of the molestation, and he could not focus on his case plan. The GAL testified their conversations deteriorated, and while Father was not physically violent, he was volatile. The GAL hoped someone new might be able to work with Father better

{¶34} During the hearing, Father became extremely frustrated and argumentative and left the courtroom before presenting any further witnesses or testifying himself.

{¶35} Attorney Dunigan, Guardian ad litem for T.K., offered a statement in addition to his report. Attorney Dunigan moved for the termination of Father's visits as being in the best interest of T.K. Attorney Dunigan stated T.K. often travels for 1.5 hours for a visit that does not go forward due to Father's behavior, refusal to visit or failure to appear. Attorney Dunigan stated these visits with Father are detrimental to T.K.

{¶36} Appellant offered no evidence.

{¶37} Following evidence, the trial court took the matter under advisement. (T. at 145).

{¶38} On February 3, 2026, the trial court issued its Judgment Entry along with Findings of Fact and Conclusions of Law granting permanent custody T.K. to SCJFS and terminating the parental rights of Appellant Mother and Father. Specifically, the trial

court found despite reasonable efforts by SCJFS, T.K. could not and should not be placed with Appellant within a reasonable amount of time and the grant of permanent custody is in the child's best interests.

{¶39} It is from this decision Appellant now appeals, raising the following error for review:

ASSIGNMENT OF ERROR

I. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILDREN WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS NOT PROVEN BY CLEAR AND CONVINCING EVIDENCE.

I.

{¶40} Upon review, we overrule Appellant's sole assignment of error.

{¶41} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long term foster care.

{¶42} Following the hearing, R.C. 2151.414(B)(1) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents

within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶43} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶44} Because R.C. 2151.414 requires a juvenile court to find by clear and convincing evidence the statutory requirements are met, the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards of review are the proper appellate standards of review of a juvenile court's permanent-custody determination, as appropriate depending on the nature of the arguments which are presented by the parties. *In re Z.C.*, 2023-Ohio-4703, ¶ 11. "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Id. at ¶ 7, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶45} Mother did not assign error to the trial court's finding the Child cannot be placed with either parent within a reasonable period of time. Rather, she challenges the

second prong of the analysis, which requires the juvenile court to determine by clear and convincing evidence it is in the best interest of the child to grant permanent custody to the agency pursuant to R.C. 2151.414(D). R.C. 2151.414(B)(1).

{¶46} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D)(1) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (c) the custodial history of the child; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors in division (E)(7) to (11) of R.C. 2151.414 apply in relation to the parents and child.

{¶47} At the permanent custody hearing herein, the case workers testified Appellant Mother has failed to complete any case plan recommendations and had not even completed a Parent Assessment. Mother tested positive for cocaine and THC in December 2024, refused all subsequent drug testing, and was unsuccessfully discharged from CommQuest. The case workers stated all the same concerns warranting removal still exist, including concerns of drug use, mental health issues, domestic violence, and the children appearing at school hungry and smelling of urine.

{¶48} T.K. has developmental delays and is repeating kindergarten. He is doing well in his kinship placement and is bonded with them. His needs are being met and he is in a safe, loving home which offers him both stability and permanency.

{¶49} Based on the foregoing, we find the trial court's finding permanent custody is in the best interest of the Child is supported by clear and convincing evidence and is not against the manifest weight of the evidence.

{¶50} Appellant's sole assignment of error is overruled.

{¶51} The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.

{¶52} Costs to Appellant.


By: Hoffman, J.

King, P.J. and

Gormley, J. concur.